## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TOMAS BRIZUELA,     )
            )
     Plaintiff,   )   Civil Action No. 11-327 Erie
            )
  v.         )
            )
MICHAEL J. ASTRUE,    )
Commissioner of Social Security,  )
            )
     Defendant.  )

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

### I.  INTRODUCTION

   Tomas Brizuela ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  Plaintiff filed his applications on September 25, 2008 alleging disability since February 2, 2008 due to back problems (AR 85-91; 106).[1]  His application was denied (AR 51-55), and following a hearing held on April 1, 2012 (AR 25-48), the administrative law judge ("ALJ") issued his decision denying benefits to Plaintiff on August 31, 2010 (AR 10-19).  Plaintiff's request for review by the Appeals Council was subsequently denied (AR 1-5), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are the parties'

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

cross-motions for summary judgment.  For the reasons that follow, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

II.     **BACKGROUND**

Plaintiff was 34 years old on the date of the ALJ's decision and has a general equivalency diploma (AR 17-18; 29).  He last worked as a steel fitter until February 2, 2008 (AR 13).

The medical records reveal that Plaintiff injured his back in March 2006 during an altercation with security guards at a casino (AR 149; 162).  An MRI dated June 15, 2006 revealed a large central to left L5-S1 disc herniation (AR 154).  In August 2006, Plaintiff underwent a lumbar discectomy performed by William Diefenbach, M.D. and returned to his normal activities (AR 173; 175).

Plaintiff was seen by Dr. Diefenbach at Saint Vincent Neurosurgery in February 2008 and reported that while playing ping pong he coughed and felt a "pop" in his back, followed by radiating pain down his left leg (AR 175).  He further reported difficulties with daily activities and that his pain was only alleviated by lying down (AR 175).  An MRI of Plaintiff's lumbar spine dated February 5, 2008 revealed a herniated disk at the L5-S1 level on the left, effacing the S2 nerve root in the lateral recess (AR 177; 193).

On March 5, 2008, Plaintiff underwent a lumbar discectomy performed by Dr. Diefenbach for his recurrent herniated disk (AR 175).  The next day, it was reported that Plaintiff was able to walk "very well" and he was discharged in stable condition (AR 206).  When seen for follow-up on March 19, 2008, Plaintiff complained of left sacroiliac joint pain and left foot paresthesia, but denied any leg pain (AR 170).  It was noted that Plaintiff's gait was steady with a "significant antalgic[2] appearance" (AR 170).  Plaintiff was prescribed a Medrol Dosepak (AR 170).

---

[2] An antalgic gait is a "limp in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side."  *See* http://medical-dictionary.thefreedictionary.com/antalgic+gait.

On April 21, 2008, physical therapy was recommended (AR 170). On April 30, 2008, Plaintiff underwent an initial evaluation for physical therapy (AR 270). He reported that his recent surgery had been successful but he complained of intermittent radicular pain (AR 270). On physical examination, Plaintiff exhibited a limited range of motion on extension and flexion activities exacerbated his symptoms (AR 270). His muscle strength was 4/5, and his symptoms were immediately reduced through "simple prone lying and correction of posture" (AR 270). Plaintiff was to undergo various treatment modalities and was instructed in a simple home exercise program (AR 270). At his appointment on May 12, 2008, Plaintiff reported that he was only able to play eight holes of golf because of radiating pain (AR 274).

On July 2, 2008, Plaintiff telephoned Saint Vincent Neurosurgery and reported that he felt he should continue to remain off work because he was unable to stand for more than two hours and was undergoing physical therapy (AR 169). Contact was made with Plaintiff's physical therapist on July 3, 2008, who reported that Plaintiff had stopped attending physical therapy for approximately one month, but had returned to therapy the previous week (AR 169). Plaintiff's therapist stated that Plaintiff had not "communicated there was anything wrong" and had reportedly been coaching baseball (AR 169). Daniel Muccio, M.D., requested that Plaintiff schedule an office visit to discuss his return to work (AR 169).

Plaintiff returned to Saint Vincent Neurosurgery on July 7, 2008 and was seen by Dr. Muccio (AR 173). Dr. Muccio noted that Plaintiff's radicular pain had improved, but he continued to have residual left buttock pain with increased activity (AR 173). Plaintiff reported that he had been coaching little league and while acting as a catcher he noticed increased pain, and since then had avoided squatting and bending (AR 173). On examination, Dr. Muccio found Plaintiff in no apparent distress, with a minimally tender back and a normal gait and stance (AR 173). He prescribed a Medrol Dosepak, extended Plaintiff's physical therapy treatment for one month, and ordered an MRI (AR 173). Dr. Muccio informed Plaintiff that he could perform light work (AR 173).

3

On July 14, 2008, Plaintiff reported to his physical therapist that his back hurt as a result of prolonged sitting on a bench and standing in long lines at a monster truck rally (AR 278). An MRI of Plaintiff's lumbar spine dated July 16, 2008 was unremarkable (AR 241). On July 28, 2008, Plaintiff reported to his physical therapist that he was "very sore" after walking up and down "a lot of stairs" (AR 280).

Plaintiff reported to his physical therapist on August 1, 2008 that he was sore secondary to being on his feet "a lot" (AR 281). On August 6, 2008, Plaintiff reported increased soreness secondary to playing tennis (AR 282). He indicated that he had no problems with daily activities, but still had some intermittent nerve pain (AR 282). Plaintiff's therapist reported that his strength was "grossly good-normal" and that Plaintiff was very active at home (AR 285). He reported that Plaintiff had minor intermittent radicular symptoms that were provoked by his compromised posture and body mechanics (AR 285). He recommended that Plaintiff be released to return to work in some capacity or undergo a functional capacity evaluation (AR 285).

On August 8, 2008, Plaintiff stated to his physical therapist that he was "still sore from playing tennis" (AR 282). On August 11, 2008, Plaintiff telephoned Saint Vincent Neurosurgery and was "upset" that he had been directed to obtain pain medication from his primary care physician (AR 168). Plaintiff stated that he "did not care" what the MRI results revealed and that he continued to have pain (AR 168). He was scheduled for an appointment with Dr. Muccio (AR 168). On August 13, 2008, Plaintiff reported to his physical therapist that he still had nerve pain and low back pain, but thought it was due to the physical exertion of jumping several times to catch a baseball the prior week (AR 283).

On August 21, 2008, Plaintiff was seen by Dr. Muccio and complained of low back pain radiating into his left buttock with an inability to stand for more than thirty minutes without severe pain (AR 171). He also reported some left leg weakness, but denied any numbness or paresthesias (AR 171). On examination, Dr. Muccio found Plaintiff in no apparent distress and his gait and stance were normal (AR 171). He reviewed Plaintiff's MRI and observed that there

4

was no residual or recurrent nerve root compression (AR 171).  Dr. Muccio noted that Plaintiff "continue[d] to report high pain levels postoperatively" (AR 171).  He decided to keep Plaintiff off work for the following eight weeks, ordered additional diagnostic studies, and referred him to Jithendra Rai, M.D., a pain management specialist (AR 171-172).

On September 3, 2008, Plaintiff was seen by his physical therapist and reported almost constant "nerve pain" (AR 289).  He had grossly good strength and his straight leg raising test was positive, but he had only "intermittent radicular symptoms, more prevalent with prolonged standing" (AR 289).  Due to Plaintiff's limited progress, it was recommended that Plaintiff continue to exercise at a fitness center (AR 289).

An EMG/NCV study conducted on September 5, 2008 was mildly abnormal, revealing a "very mild" S1 radiculopathy without evidence of active denervation (AR 179).  No additional lumbosacral radiculopathy or isolated mononeuropathy of the left leg was seen (AR 179).

Plaintiff was seen by Dr. Rai on September 18, 2008, and described his pain as constant, aching, and sharp with burning radiation down his left leg (AR 331).  He indicated that it affected his activities and was exacerbated by prolonged walking and standing (AR 331).  He claimed that physical therapy had been ineffective and that it was only relieved by lying down (AR 331).  Plaintiff denied any lower extremity weakness or problems with balance (AR 331).  Dr. Rai noted that Plaintiff sat comfortably in the chair (AR 331).  On physical examination, Dr. Rai found Plaintiff had mild tenderness in his lumbar spine and severe tenderness over the left sciatic notch (AR 331-332).  Plaintiff had a restricted lumbar range of motion in all planes, and his straight leg raising test "appear[ed]" to be positive on the left (AR 331-332).  Dr. Rai found Plaintiff had full muscle strength in his legs, normal deep tendon reflexes, normal sensation, and a normal gait (AR 332).  Dr. Rai formed an impression of lumbar radiculopathy and lumbar disc displacement, recommended that Plaintiff undergo a lumbar epidural steroid injection, and prescribed Lortab (AR 332).

An MRI dated October 22, 2008 revealed a small left-sided recurrent disc herniation at the L5-S1 level and a posteriorly displaced nerve root (AR 182; 190).  On October 23, 2008, Plaintiff had a caudal epidural injection administered by Dr. Rai (AR 330).  A post-mylographic CT scan of Plaintiff's lumbar spine dated November 5, 2008 revealed pool filling of the left S1 nerve root sleeve and soft tissue density in the ventral left lateral aspect of the same area (AR 187; 190).

On January 15, 2009, Plaintiff underwent a consultative examination performed by John Kalata, D.O. (AR 290-295).  Dr. Kalata noted that Plaintiff walked with a "sort of limping gait" favoring his left leg (AR 290).  Plaintiff reported "unbearable pain" involving his lower back and left leg, exacerbated by sitting and standing (AR 290-291).  On physical examination, Dr. Kalata found that Plaintiff could only raise his left leg about ten degrees and right leg fifteen degrees (AR 294).  He could not walk on his heels or toes or crouch (AR 294).  Plaintiff's reflexes were diminished but no atrophy was observed (AR 295).  Dr. Kalata's impressions were, *inter alia*, chronic discogenic disease of the lumbar spine and severe sciatic neuritis on the left side (AR 294).

Dr. Kalata assessed Plaintiff's ability to perform work-related physical activities, opining that Plaintiff could only frequently lift and carry 2-3 pounds, occasionally lift and carry 10 pounds, stand for 1 hour or less, sit for 3 hours, and occasionally kneel (AR 296-297).  Dr. Kalata further opined that Plaintiff was limited in his pushing and pulling abilities with his lower extremities, and could never perform postural activities other than kneeling (AR 296-297).

Dilip Kar, M.D., a state agency reviewing physician, reviewed the medical evidence of record on February 5, 2009 and concluded that Plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry slightly less than 10 pounds, stand and walk for 2 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and occasionally perform postural activities (AR 314-316).  In reaching this conclusion, Dr. Kar considered Dr. Kalata's functional assessment, and found that it was inconsistent with the medical and non-medical evidence in the

6

file (AR 320).  Dr. Kar was of the view that Dr. Kalata relied heavily on Plaintiff's subjective complaints and that his assessment overestimated Plaintiff's functional limitations (AR 320).

Plaintiff returned to Dr. Jai on March 12, 2009 and described his pain as a 4 on a scale of 1-10 (AR 329).  On physical examination, Dr. Jai reported that Plaintiff's straight leg raising test was negative, he had full muscle strength, normal deep tendon reflexes, a normal gait, and only mild lumbar and sciatic tenderness (AR 329).  Plaintiff had a decreased lumbar range of motion in all planes (AR 329).  Dr. Rai refilled Plaintiff's medications and recommended another caudal injection (AR 329).

On June 29, 2009, Plaintiff stated to Dr. Rai that he wanted to "hold off" on further injections (AR 328).  Plaintiff denied any weakness or problems with balance (AR 328).  On physical examination, Dr. Rai found mild tenderness, a restricted range of motion in all planes, and a negative straight leg raising test (AR 328).  Plaintiff was diagnosed with lumbar radiculopathy and lumbar disc displacement (AR 328).  Dr. Rai refilled his medications and advised him to return in three months for a medication refill (AR 328).

Plaintiff returned to Dr. Rai on September 29, 2009 and complained of burning, sharp, radiating pain aggravated by prolonged walking and standing (AR 327).  Dr. Rai found that Plaintiff had full muscle strength in his arms and legs and his gait was steady (AR 327).  He had a reduced range of motion in his lumbar spine and some tenderness, but his straight leg raising test was negative (AR 327).  His diagnosis remained the same and Dr. Rai refilled his Lortab prescription and advised Plaintiff to follow up for medication refills (AR 327).

On January 13, 2010, Plaintiff reported low back and left leg pain when seen by Dr. Rai (AR 326).  He indicated that he was able to obtain some relief by sitting and lying down, and that his medication helped control his pain without any side effects (AR 326).  On physical examination, Plaintiff had full muscle strength, normal sensation, normal deep tendon reflexes, and a steady gait (AR 326).  Dr. Rai found some tenderness of the lumbar spine and a reduced range of motion, but his straight leg raising test and Patrick test remained negative (AR 326).

7

His Lortab prescription was refilled and he was to return every two months for a medication refill (AR 326).

Finally, on April 8, 2010 Plaintiff returned to Dr. Rai and reported that medication took the edge off his pain with no side effects (AR 325). He denied any weakness or problems with balance (AR 325). On physical examination, Dr. Rai found that his muscle tone and bulk were symmetric, he had 5/5 muscle strength in his upper and lower extremities, his deep tendon reflexes were 2+ and symmetric in his upper and lower extremities, his sensory examination was intact, and his gait was normal (AR 325). Plaintiff's lumbar spine was mildly tender to palpation and he had a reduced range of motion, but his straight leg raising test and Patrick's test were negative (AR 325). Plaintiff's diagnosis remained the same and his medications were refilled (AR 325).

Plaintiff and Kelly Ramuss, a vocational expert, testified at the hearing held by the ALJ on April 1, 2010 (AR 25-48). Plaintiff testified that a sciatic nerve injury precluded him from working (AR 31). He stated that he had not been treated by Dr. Muccio since September 2008, but regularly saw Dr. Rai for pain management therapy (AR 31-33). Plaintiff indicated that he saw Dr. Rai every three months for approximately "three minutes" and was prescribed hydrocodone for pain management (AR 34; 40-41). He indicated he could stand for 20 minutes, sit for 40 minutes, walk for 20 minutes, and lift up to five pounds (AR 35). Plaintiff testified that he played poker every couple of months but needed to lie down every 15 to 20 minutes (AR 35). Plaintiff claimed that he attempted to play golf in May of 2008 but could only complete four holes because of pain (AR 36). Plaintiff testified that he coached baseball but "ended up laying down a lot" on the field while directing assistant coaches (AR 37). Plaintiff claimed that he spent 90 percent of his day lying down watching television, playing video games or reading (AR 38). Plaintiff indicated that he lived with his wife, who worked full-time, and his son (AR 37). He stated that his only activity was walking his son one block to school and back (AR 38). He

8

was able to drive to doctor's appointments as needed (AR 39).  Plaintiff testified that his wife performed all of the household chores and grocery shopping (AR 38-39).

The vocational expert was asked to assume an individual of the same age, education and work experience as Plaintiff, who was able to perform sedentary work,[3] but could rarely climb ramps or stairs, balance, stoop, crouch or kneel (AR 46).  Such individual was further precluded from crawling, operating foot controls, and pushing with his lower extremities, and needed the option to sit or stand at will (AR 46-47).  The vocational expert testified that such an individual could perform the jobs of a surveillance systems monitor, ticket checker, and telephone quote clerk (AR 46-47).

Following the hearing, the ALJ issued a written decision finding that Plaintiff was not entitled to a period of disability or DIB within the meaning of the Act (AR 10-19).  His request for an appeal with the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 1-5).  He subsequently filed this action.

### III.    STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood,* 487 U.S. 552, 564-65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  It has been defined as less than a preponderance of evidence but more than a mere scintilla.  *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and*

---

[3] Sedentary work involves lifting no more than 10 pounds at a time, and occasionally lifting or carrying of articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).  Sedentary jobs involve mostly sitting, with occasional walking and standing required in order to carry out job duties.  *Id.*

*Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive.  42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390.  A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record.  *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings.").  To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole.  *See* 5 U.S.C. § 706.

## IV.   DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses a five-step evaluation process to determine when an individual meets this definition.  20 C.F.R. § 404.1520.  The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given

10

claimant's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

The ALJ concluded that Plaintiff's back disorder was a severe impairment, but determined at step three that he did not meet a listing (AR 12-13). The ALJ described the Plaintiff's residual functional capacity as follows:

> …[T]he claimant had the residual functional capacity (RFC) to perform sedentary work (20 CFR 404.1567(a)) where he rarely climbs (ramps and stairs only), balances, stoops, crouches, or kneels; where he does not crawl; where he does not operate foot controls or perform pushing with the lower extremities; and where he is allowed the option to sit or stand at will.

(AR 13) (footnote omitted). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 18-19). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first challenges the ALJ's step three analysis, arguing that his back disorder met Listing 1.04A of the listed impairments as set forth in 20 C.F.R. Pt. 404. Subpt. P, App. 1. *See* [ECF No. 8] p. 5. Section 1.04A requires:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); … .

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

11

In support of his contention that his back impairment met the Listing, Plaintiff relies on his diagnostic studies and Dr. Muccio's diagnosis of lumbar radiculopathy and lumbar disc displacement, as well as Dr. Diefenbach's diagnosis of "nerve root edema."  *See* [ECF No. 8] pp. 5-6; 9.  Plaintiff argues that it is "reasonable to expect" that such condition precludes him from ambulating effectively.[4]  *Id*.  However, "[f]or a claimant to show that an impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Here, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the requirements of 1.04A.  When evaluated for physical therapy on April 30, 2008, Plaintiff's muscle strength was 4/5 (AR 270).  On July 7, 2008, Dr. Muccio found Plaintiff's back was only minimally tender, and he had a normal gait and stance (AR 173).  On August 8, 2008, Plaintiff's physical therapist reported that his strength was "grossly good-normal" (AR 285).  On August 21, 2008, Dr. Muccio found Plaintiff's gait and stance were normal (AR 171).  On September 18, 2008, Dr. Rai reported that Plaintiff's straight leg raising test "appear[ed]" to be positive on the left, but his finding does not reveal whether it was in both the sitting and supine position as required by the Listing (AR 331-332).  At that same examination, Dr. Rai found Plaintiff had full muscle strength in his legs, normal deep tendon reflexes, normal sensation, and a normal gait (AR 332).  When examined by Dr. Kalata on January 15, 2009, no atrophy was observed (AR

---

[4] The inability to ambulate effectively means "an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning … to permit independent ambulation without the use of handheld assistive device(s) that limits functioning of both upper extremities."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2(b).  Here, there is no evidence of an inability to ambulate effectively.  Plaintiff's gait and stance were reported as "normal" by Dr. Muccio in July 2008 (AR 173) and August 2008 (AR 171).  Dr. Rai also found Plaintiff's gait was "normal" in September 2008 (AR 332), March 2009 (329) and April 2010 (AR 325), and found it was "steady" in September 2009 (AR 327) and January 2010 (AR 326).

12

295).  Finally, when seen by Dr. Rai throughout the rest of 2009 and through April 2010, his muscle strength, deep tendon reflexes, sensation and gait were all found by Dr. Rai to be normal, and his straight leg raising test continued to be negative (AR 325-329).  At his final visit with Dr. Rai on April 8, 2010, Plaintiff's muscle tone and bulk were symmetric, he had 5/5 muscle strength in his upper and lower extremities, his deep tendon reflexes were 2+ and symmetric in his upper and lower extremities, his sensory examination was intact, his gait was normal, and his straight leg raising test was negative (AR 325).

Plaintiff next argues that the ALJ ignored the diagnostic studies and certain findings from his physical therapy records.  *See* [ECF No. 8] p. 6.  With respect to his physical therapy records, Plaintiff contends that the ALJ "failed to mention" his positive straight leg raising test, that his therapy was discontinued due to limited progress, and that his therapist recommended a home TENS unit.  *Id*.  In evaluating a claim for benefits, the ALJ must consider all the evidence in the case.  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).  Where competent evidence supports a claimant's claims, the ALJ must adequately explain in the record his reasons for rejecting or discrediting competent evidence.  *Sykes v. Apfel*, 228 F.3d 259, 266 (3d Cir. 2000).  Without this type of explanation, "the reviewing court cannot tell if significant evidence was not credited or simply ignored."  *Cotter v. Harris*, 642 F.2d 700, 705-07 (3d Cir. 1981); *see also Plummer*, 186 F.3d at 429 (ALJ must give some reason for discounting the evidence he rejects).  Consideration of all the evidence however, does not mean that the ALJ must explicitly refer to each and every finding contained in a report.  *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  As long as the ALJ "articulates at some minimum level [his] analysis of a particular line of evidence," a written evaluation of every piece of evidence is not required.  *Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004).

After reviewing the ALJ's decision and the medical evidence of record, we are satisfied that the ALJ complied with the dictates of *Cotter* and its progeny.  Although the ALJ did not specifically reference each and every diagnostic study, the ALJ discussed the results of the

13

September 2008 electromyogram and the November 2008 mylogram (AR 14).  As the ALJ observed, these tests revealed that Plaintiff had "very mild left S1 radiculopathy … without evidence of denervation" and a "small left L5-S1 disc herniation" (AR 14).  Objectively, the remaining diagnostic studies relied on by the Plaintiff are not supportive of his position.  For example, one of the diagnostic studies the Plaintiff faults the ALJ for failing to discuss was the MRI of his spine dated July 16, 2008, which was read as "unremarkable" (AR 241).  The MRI dated October 22, 2008 revealed only a "small" left-sided recurrent disc herniation at the L5-S1 level (AR 14; 190).

We also find that the ALJ's review of the physical therapy treatment notes was adequate.  Although the ALJ did not refer specifically to the positive straight leg raising test as found by the physical therapist in September 2008, the ALJ acknowledged that Dr. Rai found Plaintiff had a positive straight leg raising test in the same time frame (AR 15).  However, this finding in the physical therapy note of September 2008 and Dr. Rai's finding at or about the same time do not, in and of themselves, support Plaintiff's claimed limitations.  As noted by the ALJ, neurologically, Plaintiff had normal and symmetrical muscle tone, bulk and strength (AR 15).  He also had 2+ deep tendon reflexes, normal sensation in his lower extremities, and a normal gait (AR 15).

Plaintiff further challenges the ALJ's decision to accord little weight to the opinion of Dr. Kalata, the consultative examiner who evaluated the Plaintiff pursuant to the request of the Commissioner.  *See* [ECF No. 8] pp. 7; 10.  Dr. Kalata opined that Plaintiff could frequently lift and carry only 2-3 pounds, occasionally lift and carry 10 pounds, stand for 1 hour or less, sit for 3 hours, and occasionally kneel (AR 296-297).  He also found that Plaintiff was limited in his pushing and pulling abilities with his lower extremities, and could never perform postural activities other than kneeling (AR 296-297).

We first observe that the treating physician rule does not apply to a consulting physician's opinion.  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (doctrine had no

14

application to physician who examined claimant once). The Commissioner's regulations provide, however, that the ALJ must consider the extent to which the opinion is supported by a logical explanation, the degree of the medical source's specialization in a relevant field, and the extent to which the source's opinion is consistent with the entirety of the evidence. *See generally* 20 C.F.R. § 404.1527(d)(1)-(6). We find that the ALJ evaluated Dr. Kalata's opinion consistent with this standard.

In according Dr. Kalata's assessment little weight, the ALJ observed that Dr. Kalata's findings were inconsistent with the information contained in the Plaintiff's treatment records and his opinions were based "significantly" on the Plaintiff's statements (AR 16). The ALJ specifically noted that while Dr. Kalata observed Plaintiff sitting uncomfortably in a chair, Dr. Rai reported that Plaintiff was able to sit comfortably (AR 16). The ALJ further observed that treatment records from Dr. Rai's office revealed that Plaintiff's gait was described as "normal" or "steady" in September 2008, September 2009, and April 2010 (AR 16). The ALJ also found Dr. Kalata's assessment inconsistent with the assessment of Dr. Kar, the state agency reviewing physician (AR 16). Dr. Kar concluded, after a thorough review of the medical evidence, that Dr. Kalata's assessment was inconsistent with the totality of the evidence and overestimated the severity of the Plaintiff's limitations (AR 320). He concluded that Plaintiff could perform a reduced range of sedentary work (AR 313-320).

Plaintiff also argues that the ALJ erred in evaluating his subjective complaints. *See* [ECF No. 8] pp. 6-8. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Once an ALJ concludes that a claimant has a medical condition that could reasonably produce the complained of symptoms, he or she must evaluate the intensity of the symptoms and the extent to which they impair the individual's ability to work. *Hartranft*, 181 F.3d at 362. "This obviously requires the ALJ to determine the extent to which a claimant is

15

accurately stating the degree of pain or the extent to which he or she is disabled by it." *Id*. In assessing subjective complaints, Social Security Ruling ("SSR") 96-7p and the regulations provide that the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record.  20 C.F.R. § 404.1529(c); *SSR* 96-7p, 1996 WL 374186 at *2.  An ALJ may reject a claim of disabling pain where he "consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record."  *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

We find the ALJ's assessment of the Plaintiff's subjective complaints was consistent with the above standards.  Plaintiff testified that debilitating back pain required him to lie down up to 90 percent of the time (AR 14).  The ALJ found however, that this testimony was inconsistent with the objective findings, his own statements to his various health care providers regarding his activities, and with his level of treatment (AR 14-16).

In this regard, the ALJ cited to the objective diagnostic studies, which revealed "only a small L5-S1 disc herniation" and "very mild left S1 radiculopathy … without evidence of active denervation" (AR 14).  The ALJ also referenced several findings on physical examination, noting that in September 2008 Dr. Rai found Plaintiff had no kyphoscoliotic[5] deformity in his spine, and his lumbar paravertebral muscles were only mildly tender (AR 15).  While Plaintiff had a positive straight leg raising test at this examination, the ALJ noted that neurologically, he had normal and symmetrical muscle tone, bulk, and strength, and he had 2+ deep tendon reflexes, normal sensation in his lower extremities and a normal gait (AR 15).  The ALJ further observed that in June 2009, Plaintiff's physical examination again revealed no kyphoscoliotic

---

[5] Kyphoscoliosis is the backward and lateral curvature of the spinal column.  *See* http://medical-dictionary.thefreedictionary.com/kyphoscoliosis.

deformity in his spine and only mild tenderness was noted, and he had a negative straight leg raising test (AR 16).  The ALJ noted that in September 2009, Dr. Rai found Plaintiff had a steady gait and full muscle strength, and while he had a reduced range of motion and some tenderness, his straight leg raising test remained negative (AR 16).  The ALJ observed that at the end of his physical therapy in September 2009, his therapist reported that his strength was grossly good and Plaintiff complained of only intermittent radicular symptoms that were more prevalent with prolonged standing (AR 14).  Finally, the ALJ noted that at his last physical examination performed by Dr. Rai in April 2010, Plaintiff's neurological examination showed symmetric muscle tone and bulk, full muscle strength in all extremities, 2+ and symmetric deep tendon reflexes, intact sensation and a normal gait (AR 14).  The ALJ found that while he had some reduced range of motion and some tenderness, his straight leg raising test and Patrick's test were negative (AR 14).

The ALJ further found that Plaintiff's testimony was inconsistent with his reports to his various health care providers (AR 15-16).  Plaintiff argues that the ALJ improperly considered his "failed" attempts to play golf and coach little league.  *See* [ECF No. 8] p. 6; 8.  We disagree. The ALJ considered the Plaintiff's testimony that he had only been able to play four holes of golf, had used a cart, and had to lie down on the tee boxes because of back pain (AR 15).  The ALJ observed, however, that Plaintiff reported in May 2008 that he had completed eight holes of golf secondary to pain, and reasonably found Plaintiff's statements made contemporaneously at the time of treatment more persuasive (AR 15).  The ALJ concluded that regardless of the number of holes played, the fact Plaintiff would attempt such a physically demanding activity belied his claims of debilitating back pain (AR 15).  The ALJ further observed that Plaintiff reported to Dr. Diefenbach in July 1008 that he was coaching little league baseball, but testified that back pain required him to lie down and direct others in their duties (AR 15).  The ALJ reasonably concluded that Plaintiff's ability to show up consistently for an entire season and provide guidance to a group of parents was not indicative of functional limitations that would

17

preclude work activity at the sedentary level (AR 15).  Finally, the ALJ found it significant that given the "extreme level of inactivity" as testified to by the Plaintiff at the hearing, there was no evidence of muscle atrophy, and that he retained normal muscle strength, tone and bulk (AR 14-15).

The ALJ also found that Plaintiff's claims of debilitating back pain were discredited by his own treating sources.  For example, the ALJ "found it difficult" to afford weight to Plaintiff's statements when Plaintiff's physical therapist indicated that his back issues did not preclude the performance of a regular exercise regimen (AR 15).  The ALJ further observed that Dr. Muccio found Plaintiff could perform light duty (AR 16).  Plaintiff argues that the ALJ improperly considered Dr. Muccio's opinion in August 2008 that he should remain off work for eight weeks due to an inability to stand for greater than 30 minutes.  *See* [ECF No. 8] p. 7.  The ALJ found, however, that "even assuming" Plaintiff could not stand for more than 30 minutes at a time, he would not be precluded from performing a limited range of sedentary work (AR 17).  The ALJ accommodated any limitation in this area by allowing Plaintiff the option to sit and stand as needed (AR 17).  The ALJ finally noted that a claimant's impairment must be expected to last for a continuous period of at least 12 months (AR 17).  He noted that eight weeks was not a "vocationally significant" period (AR 17).

Finally, the ALJ considered the Plaintiff's treatment regimen, observing that since Plaintiff's treatment since late November 2008 had consisted of only routine medication management for his pain (AR 16).  The ALJ noted that his prescription was for hydrocodone, and that Plaintiff repeatedly reported to Dr. Rai that it helped his pain without any side effects (AR 16).  The ALJ further observed that Plaintiff's physical therapist recommended he engage in regular active exercise, and that he had not required emergency intervention for pain issues (AR 17).

In sum, the ALJ adequately explained his basis for discrediting Plaintiff's complaints of disabling pain and all of his findings are supported by substantial evidence.  *See Hartranft*, 181

18

F.3d at 362 (holding that ALJ's credibility determination was supported by substantial evidence where ALJ found plaintiff's complaints about pain and other symptoms were inconsistent with the objective medical evidence, plaintiff's treatment regimen, and plaintiff's description of his daily activities); *Sternberg v. Comm'r of Soc. Sec.*, 438 Fed. Appx. 89, 96 (3d Cir. 2011) (holding that substantial evidence supported ALJ's credibility determination where he considered plaintiff's testimony, weighed it against various conflicting evidence in the record, and specified his reasons for finding plaintiff's subjective complaints of pain not entirely credible); *Harkins v. Comm'r of Soc. Sec.*, 399 Fed. Appx. 731, 735 (3d Cir. 2010) (same).

Plaintiff also challenges the ALJ's reliance on the vocational expert's testimony that there were a number of jobs in the national economy that he could perform despite his "eroded" residual functional capacity. *See* [ECF No. 8] pp. 8; 10. Plaintiff argues that the ALJ should have credited the vocational expert's testimony that there would be no jobs he could perform if he was required to lie down unpredictably and would be unable to perform his job 70 percent of the workday on a consistent basis (AR 47). Testimony of a vocational expert concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the hypothetical question accurately portrays the claimant's impairments. *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). However, the ALJ is only required to accept such testimony if such limitation was supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). For the reasons previously discussed, substantial evidence supports the ALJ's rejection of this claimed limitation.

Finally, Plaintiff argues that the ALJ failed to fully develop the record. *See* [ECF No. 8] p. 8. The ALJ has a duty to develop a "full and fair" record in social security cases. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Here, it is unclear what medical evidence the Plaintiff claims that the ALJ should have obtained. The administrative record contained evidence from all of the Plaintiff's treating sources, including Dr. Rai, a pain management specialist (AR 160-164; 325-336); Dr. Diefenbach, a neurosurgeon (AR 165-190); Saint Vincent

Health Center (AR 192-261); and Saint Vincent Rehab Solutions (AR 262-289).  The ALJ also subpoenaed the records from Dr. Rai's office post-hearing (AR 23-24).  Accordingly, we reject Plaintiff's contention that the ALJ failed in his duty to fully develop the record.

### V.   CONCLUSION

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TOMAS BRIZUELA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-327 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this 28th day of December, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF. No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 9] is GRANTED.  JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Tomas Brizuela.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm:    All parties of record